## PRINCE GEORGE'S HOMES, INC. ET AL. *v.* ALBERT M. CAHN

[No. 171, September Term, 1977.]

*Decided July 12, 1978.*

The cause was argued before MURPHY, C. J., and SMITH, DIGGES, LEVINE, ELDRIDGE, ORTH and COLE, JJ.

*Joseph S. Casula* for appellants.

*Amicus curiae* brief filed by Prince George's County, Maryland, *James C. Chapin, County Attorney, Carl A. Harris, Deputy County Attorney,* and *Steven M. Gilbert, Associate County Attorney,* on the brief.

*James R. Bucher,* with whom were *Sasscer, Clagett, Channing & Bucher* on the brief, for appellee.

DIGGES, J., delivered the opinion of the Court.

This case presents the question whether a purchaser of real property at a tax sale, who has timely filed suit to foreclose the rights of redemption but who has not concluded those proceedings for a period of nine years, may obtain a foreclosure decree after the property has been sold a second time for subsequent delinquent taxes and suit has been filed by the assignee of the second purchaser to likewise foreclose the rights of redemption. We conclude that under the

circumstances here, it was error to dismiss the original purchaser's foreclosure action.

The occurrences which resulted in the litigation now before this Court are not complicated. In March of 1965 Albert M. Cahn, the respondent, purchased four lots in Maryland Park Terrace at a tax sale conducted by the collector of taxes for Prince George's County. *See* Md. Code (1957, 1975 Repl. Vol. & 1977 Cum. Supp.), Art. 81, §§ 70-123C. Within the statutorily prescribed time period — after a year and one day from the date of sale but within two years of that date, *see id.* § 100 (a) (1975 Repl. Vol.)[1] — Cahn filed a proceeding to foreclose the rights of redemption in the property. He took virtually no action toward obtaining a final decree of foreclosure for the next seven years, however, and on May 14, 1974, the tax collector conducted a second sale of the property; this time the county bought the lots and later assigned its tax sale certificate to the petitioner, Prince George's Homes, Inc. When the petitioner filed its bill of complaint to foreclose the rights of redemption, naming as defendants the record owners of the property and the respondent, Cahn promptly filed a petition to redeem; his long-pending foreclosure proceeding was ultimately consolidated with the one more recently instituted by Prince George's Homes. The circuit court then granted the petitioner's motion for summary judgment, finding as a matter of law that since Cahn "did not exercise his right to foreclose the rights of redemption in [the] property acquired

---

1. Section 100 reads, in part:

(a) A holder of any certificate of sale, his heirs or assigns, may at any time after the expiration of one year and a day from the date of sale in any of the counties, or after six months from the date of sale in Baltimore City, file a bill in equity to foreclose all rights of redemption of the property to which such certificate relates, as hereinafter provided. The right to redeem shall, nevertheless, exist and continue until finally barred by decree of the court of equity in which the foreclosure proceeding is filed. Unless a proceeding to foreclose the right of redemption is filed within two years of the date of the certificate of sale, the said certificate shall be void and any and all right, title and interest of the holder of the certificate of sale of [*sic*] his predecessors thereof, in and to the property sold shall cease and all money received by the collector on account of the said sale shall be deemed forfeited, and shall be applied by the collector on the taxes in arrears on said property.

at the first tax sale by obtaining a final decree within the time limited by statute [two years] . . . , the subsequent sale of the property by the County to Prince George's Homes, Inc. for all taxes currently in arrears extinguished and voided all rights the defendant Albert M. Cahn had acquired under the tax certificate he purchased on March 1, [1965]." The court's consolidated final decree thus denied both Cahn's petition to redeem and his bill to foreclose rights of redemption, and vested Prince George's Homes with an indefeasible fee simple title to the property.

Unhappy with this resolution of the matter, Cahn appealed to the Court of Special Appeals, which reversed the circuit court's judgment, holding that (1) the trial court erred in denying Cahn's petition to redeem in the foreclosure proceedings brought by Prince George's Homes, since there is no statutory authority granted to the court to deny the right to redeem of an owner or other person having an interest in the property until that right has been foreclosed by final decree, and (2) the trial court erred in dismissing Cahn's earlier suit to foreclose the rights of redemption. On the latter point the court explained that the statute merely requires that such a suit be filed within two years in order to prevent a tax certificate from becoming void, not that it be concluded within that time; Cahn's interest in the property had thus not terminated and, since the tax collector has no authority to resell the property unless he first has the original proceedings concluded, the second sale was a nullity. *Cahn v. Prince George's Homes,* 38 Md. App. 280, 283-86, 378 A. 2d 157, 159-61 (1977). We granted the petitioner's request that a writ of certiorari issue, and now, with somewhat different reasoning, affirm the judgment of the Court of Special Appeals.

The real thrust of the petitioner's argument here is that Cahn's failure to foreclose and obtain title within two years of the tax sale at which he purchased, allowed the tax collector to resell the property, which in turn resulted in Cahn's tax certificate becoming "void and of no effect." In support of these propositions, the petitioner cites *Bullard v. Hardisty,* 217 Md. 489, 143 A. 2d 493 (1958), and the announced

legislative policy to encourage the foreclosure of rights of redemption and the decreeing of marketable titles to property sold by the tax collector. Md. Code (1957, 1975 Repl. Vol.), Art. 81, § 97. Unlike the petitioner, however, we find no authority, either in the statute or in *Bullard,* for the proposition that Cahn's tax certificate was voided; nor is it necessary to so construe the statute in order to further the legislative intention, even assuming we were at liberty to do so. Indeed, *Bullard* is precedent for our conclusion that the tax collector here should not have conducted the second sale.

We begin our discussion by reiterating that the statute specifically provides that "[u]nless a proceeding to foreclose the right of redemption is *filed* within two years of the date of the certificate of sale, the said certificate shall be void . . . ." Code, Art. 81, § 100 (a) (emphasis added). It could hardly be clearer that the tax certificate is void only if a proceeding is not *filed* within the two-year period — there is simply nothing, either in section 100 or elsewhere in the statute, to suggest that the certificate is nullified if foreclosure proceedings are not *concluded* within that time and the tax collector thereupon resells the property for subsequent delinquent taxes.[2] We simply may not read into the statute something that is plainly not there.

As for *Bullard v. Hardisty, supra,* we there held that the tax collector should not have conducted a second sale before the two-year period for instituting foreclosure proceedings under the first sale had expired, 217 Md. at 492, 143 A. 2d at 495, and that a petition by the second purchaser to redeem

---

2. The petitioner in urging the contrary points to language in Bullard v. Hardisty, 217 Md. 489, 494, 143 A. 2d 493, 496 (1958), indicating that a tax certificate becomes void if its holder does not *exercise* the right to foreclose within two years. In view of the unambiguous statutory language, our statement in *Bullard* that the right must be "exercised" within two years cannot mean other than that the purchaser must file the proceedings within that time. Petitioner also cites Shapiro v. National Color Ptg. Co., 191 Md. 194, 60 A. 2d 679 (1948), to buttress its proposition that the foreclosing party must obtain title within the two-year period, quoting our statement that "a 'purchaser' at a tax sale is virtually a mortgagee. He can, and within two years must, foreclose his lien, and get either (*a*) a marketable title to the property or (*b*) payment of his lien." *Id.* at 202 [682]. For the same reasons noted above, it should be evident that since the statute specifically allows a purchaser two years to file a suit, the *Shapiro* language cannot mean that the proceedings must also be concluded within that same time period.

the property in foreclosure proceedings brought by the first purchaser was properly dismissed. *Id.* at 494 [496]. We agree with the Court of Special Appeals that *Bullard* is substantial authority for the principle that if foreclosure proceedings are timely commenced, but have not been judicially terminated, the tax collector may not sell the property a second time; if the proceedings are not otherwise concluded in a reasonable time, his only recourse is to intervene and seek a termination of the action. We clearly stated the controlling doctrine in *Bullard*:

> [T]he decisive issue as we see it is whether the Director of Finance had authority to make the second sale before the time for instituting foreclosure proceedings under the first sale had expired, or, if such proceedings had been commenced in due time before they had been either concluded or abandoned. *In the event of such delay as to indicate abandonment, the collector could intervene in the proceedings for the purpose of having them concluded. [Id.* at 492 [495] (emphasis added).]

Contrary to petitioner's contention, there is no intimation whatever in *Bullard* that, with a foreclosure action pending, the collector may simply resell the property and by doing so render the first tax sale certificate void; rather the statute and *Bullard's* construction of it require the conclusion that the collector must first obtain a termination of that action. We pointed out in that case that the statutory power to sell real property for nonpayment of taxes should be complied with in every particular, and that section 96 of the statute provides that until a final decree foreclosing all rights of redemption is passed, the property continues to be assessed as though no sale had been made, with subsequently accruing taxes being additional liens against the property which must be paid by the tax sale purchaser before the collector will deliver a deed to him.[3] 217 Md. at 493, 143 A. 2d at 495-96.

---

3. Section 96 has this year been amended and, effective July 1, 1978, reads:

Until a final decree is passed under the provisions of this subtitle foreclosing all rights of redemption in any property sold by the

The implication from the law, we said, is that during the two-year period in which a bill to foreclose may be filed, there could be no other tax sale, and that "subsequent taxes shall continue to accrue until the purchaser or holder of the certificate of sale has had an opportunity to file his bill and to secure a deed from the collector." *Id.* at 493-94 [496]. Although the factual situation in *Bullard* made it unnecessary to decide whether there could be no sale *beyond* the two-year period if suit were filed within that time, we think there is no other reasonable conclusion. The statute allows a purchaser two years within which to file proceedings; to permit the collector to resell immediately upon expiration of the two years would give the purchaser, if he has taken advantage of the statutorily-allowed time in which to file, *no* time in which to conclude those proceedings — no "opportunity to . . . secure a deed from the collector." *Id.* at 494 [496]. Since the legislature has not seen fit to impose a time period within which he must do so, *see* note 4 *infra* and accompanying text, and since that is not a proper matter for judicial determination nor for ad hoc determination by the tax collector, it is eminently reasonable to interpret the statute as not permitting resale until the foreclosure proceedings are concluded — an event which the tax collector may precipitate by simply intervening for the purpose of having the suit terminated.

We may also quickly dismiss the petitioner's assertion that construing the statute as we have done here would frustrate the expressed legislative policy of encouraging the foreclosure of rights of redemption; this construction, it claims, allows foreclosure proceedings to pend indefinitely and thus permits the purchaser to maintain an interest in the property with no risk of loss and no obligation to pay the

---

collector such property shall continue to be assessed as though no sale had been made, whether the county commissioners or some other person holds the certificate of sale. All taxes accruing subsequent to the date of sale, together with interest and penalties thereon, shall be additional liens against the property. The collector shall not deliver a deed to the holder of a certificate of sale under the provisions of this subtitle unless and until all subsequent taxes, together with interest and penalties thereon, are paid in full. [1978 Md. Laws, ch. 706.]

accruing taxes. Although, in cases where the tax collector fails to seek a termination of the proceedings, the result may indeed be a "procedural loophole" not intended by the legislature, *Cahn v. Prince George's Homes,* 38 Md. App. 280, 287, 378 A. 2d 157, 162 (1977), we are not at liberty, as we have already observed, to insert in the statute a time limitation within which a purchaser must conclude his foreclosure action. In any event, we agree with the Court of Special Appeals that Maryland Rule 530 effectuates the legislative purpose by providing for the dismissal of cases that have been dormant for eighteen months. *Id.* While, for whatever reason, Rule 530 was not utilized in this case and there is no issue involving it before us now, we note that, contrary to the petitioner's contention, there is nothing in that rule to prevent its invocation by the tax collector. We observe as well that there is nothing to prevent the court, upon request or sua sponte, from scheduling the matter for final disposition, as with any other pending action, at any appropriate time. Finally, we mention that the legislature has recognized the gap pointed out by the Court of Special Appeals and, in response to it, specifically declined to place a time limit on obtaining a final decree in such foreclosure proceedings. *See* 1978 Md. Laws, ch. 706, at 2085-86 (preamble).[4]

We pause to note that, although neither of the parties has raised the issue, an amicus brief filed by Prince George's County urges that it was "unnecessary" and "improper" for the Court of Special Appeals to pass on the validity of the second tax sale. The county points out that section 109 of the statute provides that the validity of proceedings taken by the collector is "conclusively presumed" unless a defendant in the foreclosure proceeding by answer sets up the invalidity of the

---

4. Instead the purchaser at a tax sale will, from July 1, 1978, onward, be required to serve notice of the institution of such an action on the tax collector, 1978 Md. Laws, ch. 706, at 2088 (to be codified at Md. Code (1957, 1975 Repl. Vol., 1978 Cum. Supp.), Art. 81, § 106 (b)), who, if not made a party by the purchaser, *see* 1978 Md. Laws, ch. 706, at 2087 (to be codified at Md. Code, Art. 81, § 103(e)), may intervene in the proceedings. Bullard v. Hardisty, 217 Md. 489, 492, 143 A. 2d 493, 495 (1958). "Once the county has notice of the foreclosure proceeding and the ability to intervene, it can act in a timely fashion to protect its interest in the property . . . ." 1978 Md. Laws, ch. 706, at 2086 (preamble).

sale as a defense to the proceeding.[5] From this the county argues that since Cahn did not assert the invalidity of the second sale before the chancellor but rather merely filed a petition to redeem, the validity of the sale should have been presumed by the Court of Special Appeals. While there is some logic in this argument, we need not here be detained by an exploration of the precise meaning and scope of section 109. In the first place, Prince George's County does not contend that section 109 deprives this Court of the power to determine the validity of the second tax sale, and neither party to the cause has suggested that the issue was inappropriate for determination; indeed the question has been fully briefed and argued by all interested parties, reflecting the significance of the issue as a practical matter.[6] More importantly, however, our resolution of this case would remain the same even if we found the second sale to be proper, since, as Prince George's County recognizes, Cahn would have had a right to redeem the property from that second sale, and upon doing so would eliminate the petitioner's interest in the property.

We have already explained at some length that the statutory provisions will not support a conclusion that Cahn's

---

5. Section 109 of Article 81 reads:

In any proceeding to foreclose the right of redemption, it shall not be necessary to plead or prove the various steps, procedure and notices for the assessment and levy of the taxes for which the property was sold or the proceedings taken by the collector to sell the property. The validity of all such procedure shall be conclusively presumed unless a defendant in the proceeding shall, by answer, set up as a defense thereto the invalidity of the taxes or the invalidity of the proceedings to sell or the invalidity of the sale. A defendant alleging any jurisdictional defect or invalidity in the taxes or in the proceeding to sell, or in the sale, must particularly specify in his answer such jurisdictional defect or invalidity and must affirmatively establish such defense.

6. We also point out that we do not hold that the second tax sale here was "void in its inception" or "void ab initio," see Cahn v. Prince George's Homes, 38 Md. App. 280, 286, 378 A. 2d 157, 161, 162 (1977), insofar as those terms suggest that a final enrolled decree emanating from such a second sale could be set aside on the basis that the sale was improper. Quite the contrary is indicated by the statute: Section 109 conclusively presumes the validity of such a sale unless this type of "jurisdictional defect" is affirmatively established as a defense in the foreclosure proceeding, and section 113 specifically provides that a final decree may not be reopened "except on the ground of lack of jurisdiction or fraud in the conduct of the proceedings to foreclose . . . ."

tax certificate was voided. And a tax sale purchaser clearly has an interest in the property purchased, which our cases have determined to be a lien on that property. *Stewart v. Wheatley,* 182 Md. 455, 458, 35 A. 2d 104, 107 (1943) (purchaser acquires a lien which ripens into title through the process of foreclosure); *see Keefauver v. Richardson,* 233 Md. 545, 549, 550, 197 A. 2d 438, 440, 441 (1964); *Shapiro v. National Color Ptg. Co.,* 191 Md. 194, 202, 60 A. 2d 679, 682 (1948). It follows that a tax sale purchaser is a person "having an estate or interest in the property" within the meaning of the statute allowing such persons to redeem at any time until a final decree is passed foreclosing that right. *See* Md. Code (1957, 1975 Repl. Vol.), Art. 81, §§ 92 & 100. Thus even if the tax collector could appropriately have sold the property a second time, Cahn was entitled to redeem it.

Since there is no authority, statutory or otherwise, for the conclusion that the respondent's tax certificate and thus his interest in the property was voided, the trial court erred in denying Cahn's redemption petition and in refusing to allow him to conclude his foreclosure suit.

> *Judgment of the Court of Special Appeals affirmed.*
> *Costs to be paid by the petitioner.*