545 A.2d 98

**Doris Lee STOUTER**

v.

**James Theodore BAILEY, et al.**

**No. 430, Sept. Term, 1988.**

Court of Special Appeals of Maryland.

Aug. 5, 1988.

Certiorari Denied Nov. 29, 1988.

Paula M. Junghans and Miriam L. Fisher (Melnicove, Kaufman, Weiner, Smouse & Garbis, P.A., on brief), Baltimore, for appellant.

Hillel Abrams, Silver Spring, for appellees.

Argued before BISHOP, ALPERT and POLLITT, JJ.

BISHOP, Judge.

Pursuant to Md. Rule 1029,[1] Doris Stouter (Stouter) brings this expedited appeal from the Order of the Circuit Court for Frederick County which fixed the amount required for James Bailey (Bailey) to exercise his right of redemption regarding his 96–acre tract of property purchased at a tax sale by Stouter. Stouter asks whether under Section 14–845(b) of the MD TAX–PROP. CODE ANN. (1986, 1987 Cum.Supp.), she is entitled to be compensated by Bailey for the value of improvements she made to the property after the date she was served with a copy of Bailey's motion to set aside her deed.

## FACTS

The parties' Agreed Statement of Facts provides:

On November 10, 1980, the Collector of Taxes (the Treasurer of Frederick County) sold to the [appellant], Mrs. Doris Lee Stouter ("Stouter"), for non-payment of taxes [on] the property which is the subject matter of this case. On January 18, 1982, Stouter filed a bill of complaint to foreclose the equity of redemption in the property. On April 13, 1982, the Circuit Court for Frederick County entered a final decree foreclosing the equity of

---

1. *See* Md. Rule 1029b, now Rule 8–207.

redemption; a deed to the property was executed by the Treasurer of Frederick County (the "deed") and recorded the same day.

On December 7, 1982, James Theodore Bailey, Robert Pendelton Bailey, and Lulu Bailey Sween, as Substitute Trustees of the Estate of Philip L. Culler ("Baileys"), the substituted defendants, filed a motion to vacate the final decree and to set aside the deed to Stouter. This motion was personally served on Stouter on December 9, 1982. After numerous preliminary pleadings, the motion came up for hearing on January 31, 1985.

By order dated February 2, 1985, the Circuit Court denied the motion to vacate the final decree, and the Baileys appealed. The Court of Special Appeals, in *Bailey v. Stouter*,[2] 65 Md.App. 180, 502 A.2d 1125 (1986), reversed and remanded, and, on June 6, 1986, the Circuit Court vacated its decree of April 13, 1982, and declared the deed void.

During the period from December 9, 1982, through June 6, 1986, Stouter claims to have made certain repairs and improvements to the property which are the subject matter of this appeal.

Stouter received copies of all pleadings and correspondence as and when filed, mailed, and received.

Baileys' motion to redeem the property was scheduled for a hearing on October 27, 1986. Prior to the hearing, the Baileys filed a motion *in limine*, seeking to prohibit testimony with respect to improvements claimed to have been made by Stouter after December 9, 1982, being the date on which Stouter was personally served with Baileys' motion to vacate the final decree and set aside her deed to the property in question. On March 6, 1987, the Circuit Court filed its opinion, and, on May 18, 1987, the Court issued its order granting the motion *in limine* and certifying its order as a final order.

---

**2.** [The correct citation is 66 Md.App. 180 (1986).]

That order of the Circuit Court was appealed to the Court of Special Appeals, and, by order dated December 23, 1987, this Court dismissed the appeal for lack of jurisdiction. *Stouter v. Bailey, et al.*, No. 1198 (September Term, 1987).

Prior to [the] hearing in the Circuit Court, Stouter moved for reconsideration of the Court's ruling on Baileys' motion *in limine*. Stouter's motion for reconsideration was denied, and Baileys' motion for redemption came up for hearing on April 11, 1988. The parties stipulated as to improvements made by Stouter prior to December 9, 1982, and, by final order dated April 25, 1988, the Court set the amounts necessary for redemption. An appeal was noted by Stouter on May 4, 1988.

.      .      .      .

## THE LAW

Under Maryland Tax–Property Article, § 14–808, the collector of taxes for a county or municipal corporation is authorized to sell property on which the tax is in arrears. Section 14–827 gives an owner or other person with an estate or interest in the property the right to redeem the property by paying to the collector the amount required for redemption at any time until the right of redemption has been finally foreclosed. If the property is redeemed, the holder of the certificate of sale is entitled to be reimbursed for expenses actually incurred in preparing for or in proceeding to foreclose the right of redemption. § 14–843. In addition, the holder is entitled to be reimbursed for those fees and taxes paid in regard to the property, which are specified in § 14–843.

Before its amendment in 1986, Section 14–833, provided that a person who holds a certificate of sale from a tax sale, or his heirs or assigns, may at any time after one year and a day from the date of sale[3], petition the circuit court to foreclose all rights of redemption in the property. If the right of redemption is foreclosed, the holder of the certifi-

---

3. § 14–833(a), as amended July 1, 1986, reduces this period to six months.

cate becomes the holder of the property in fee simple. § 14–844. The judgment on behalf of the holder may be set aside, however, on the ground of lack of jurisdiction or fraud in the conduct of the proceeding to foreclose. *Bailey v. Stouter*, 66 Md.App. 180, 502 A.2d 1125 (1986); *see Kaylor v. Wilson*, 260 Md. 707, 711, 273 A.2d 185 (1971). In *Monumental Ent. v. City of Baltimore*, 26 Md.App. 24, 33, 337 A.2d 176 (1975)[4] we stated the rule thus:

It is plain, accordingly, that a final decree foreclosing rights of redemption is conclusive except when lack of jurisdiction is shown or there was fraud in the conduct of the proceedings to foreclosure. This was emphasized by the Court of Appeals in *Hardisty v. Kay*, 268 Md. 202, 299 A.2d 771, when it declared at 208 [774]:

We think the legislature has been explicit in its language and clearly expressed its intention that a final decree is conclusive and *no* application shall thereafter be entertained unless it falls within the exempted categories.

In *Bailey, supra,* we reversed the circuit court and vacated the decree of foreclosure because of a jurisdictional deficiency. We remanded the case for further proceedings. The reasoning underlying our decision in that case is relevant to our disposition of the case *sub judice.*

At the time Stouter sought to foreclose the right of redemption, the property was owned by James T. Bailey

---

**4.** This rule has now been codified in § 14–845(a) which states:

(a) *Reopening judgments generally.*—A court in the State may not reopen a judgment rendered in a tax sale foreclosure proceeding except on the ground of lack of jurisdiction or fraud in the conduct of the proceedings to foreclose; however, no reopening of any judgment on the ground of constructive fraud in the conduct of the proceedings to foreclose shall be entertained by any court unless an application to reopen a judgment rendered is filed within 1 year from the date of the judgment.

This section is not relevant here, however, since the General Assembly limited its applicability to only those judgments rendered in a tax sale foreclosure proceeding on or after February 1, 1986. The final decree foreclosing the equity of redemption in the case *sub judice* was entered on April 13, 1982.

and Philip R. Bailey as trustees of the estate of Philip L. Culler. Both James and Philip were Maryland residents residing near Leonardtown, Maryland (Hollywood and Bushwood, respectively). Nonetheless, Stouter did not have subpoenas issued for James and Philip to the Maryland addresses listed in the county tax records.[5] Instead, she issued a summons for James at a Washington, D.C. address and for Philip at an address in Frederick. James' summons was sent by registered mail and it was returned undelivered. The summons for Philip was returned *non est* with a notation indicating that there was no one by that name at that address. Stouter then proceeded to rely upon notice by publication as to them as well as various other defendants.[6] In reviewing her actions we concluded:

> We do not know why appellee chose to ignore the Leonardtown address shown in the tax record. In her brief she asserts that trial counsel's search of the court records revealed "newer, more current addresses for the surviving trustees." There is nothing in the record to support that assertion; indeed, in light of trial counsel's naming of Pearl as a defendant and his use of the birth names of Lulu, Alice, and Janice [the grandchildren], the diligence of his search of the court records is questionable. Even assuming that counsel initially acted in good faith, in the reasonable belief that he had discovered more current addresses, the reasonableness of that belief vanished when the notice mailed to James in the District of Columbia was returned undelivered and the summons sent to Philip in Frederick was returned *non est*—"no one heard of this subject at this address." At that point, it was incumbent upon him, at the very least, to try the Leonardtown address. He had no right to continue to

---

**5.** As we stated in 66 Md.App. at 183, 502 A.2d 1125, "the county tax records at that time showed the owners of the property to be 'Pearl C. Bailey, et al., c/o Kenneth Andrew Bailey, P.O. Box 71, Leonardtown, Maryland'".

**6.** The other defendants were the grandchildren of Philip L. Culler.

ignore that address and simply assume that their whereabouts were unknown. Publication is not the preferred method of giving notice to a Maryland resident. It is to be used only when personal service proves beyond the plaintiff's ability to effect, and the record simply does not show that the [sic] have been the case here.

66 Md.App. at 189, 502 A.2d 1125 (footnote omitted). Based upon the foregoing conclusion, we held that "the court had 'neither the right nor the power' to proceed against their interest in the property" and that the decree of foreclosure was "jurisdictionally deficient". 66 Md.App. at 192, 502 A.2d 1125.

The circuit court, on remand, declared the decree void. This activated § 14–845(a),[7] which provides:

> *Amount required to redeem.*—If the judgment of the court foreclosing all rights of redemption is set aside, the amount required to redeem is the amount required by this subtitle, and in addition, the reasonable value, at the date the judgment is set aside, of all improvements made on the property by the purchaser and the purchaser's successors in interest.

Stouter argues that the fact she had notice of Bailey's motion to vacate her deed is of no consequence and accordingly, she is entitled under § 14–845(a), to the "reasonable value ... of all improvements" as of June 6, 1986, the date her deed was set aside. Bailey responds that the term "purchaser", as used in § 14–845(a), applies only to *"bona fide* purchasers" without notice of an adverse claim to the title, and therefore Stouter's notice of his intention to redeem the property prevents her from recovering any money for improvements made after that date.

The legislature by enacting § 14–845(a) did not intend to modify existing common and statutory law, except as mod-

---

**7.** Section 14–845(a) was recodified as subsection (b) effective July 1, 1987, but the recodification is not applicable to any judgment rendered in a tax sale foreclosure proceeding on or after February 1, 1986. *See* note 4, *supra.*

ified by the explicit language of the statute. *Hardy v. State*, 301 Md. 124, 131, 482 A.2d 474 (1984); *Bradshaw v. Prince George's County*, 284 Md. 294, 302, 396 A.2d 255 (1979); *Stewart v. Wheatley*, 182 Md. 455, 457–458, 35 A.2d 104 (1943); and *Furman v. Glading*, 36 Md.App. 574, 581, 374 A.2d 414 (1977), *aff'd*, 282 Md. 200, 383 A.2d 398 (1978). For example, the statute is not to be enforced without regard to possible fraud or misrepresentation by the tax-sale purchaser in the acquisition or improvement of the property.

The Court of Appeals said recently "[w]e are dealing here with statutory construction, and our endeavor must be to identify the 'objective, goal, or purpose' of the legislative scheme, and to construe the statute in a way that will advance that purpose, not frustrate it." *Neal v. Fisher*, 312 Md. 685, 693, 541 A.2d 1314 (1988) (quoting *Kaczorowski v. City of Baltimore*, 309 Md. 505, 513, 525 A.2d 628 (1987)). The *Neal* court also said:

> When the legislature enacts a statute designed, as the Act is, to provide remedies not available at common law, it is not desirable that construction should be mindlessly guided by a slogan, such as "statutes in derogation of the common law must be narrowly construed." Statutes of this nature "are remedial and designed to close a gap in the preexisting law...." *State v. Sherman*, 234 Md. 179, 184, 198 A.2d 71, 73 (1964). A court should not permit "a narrow or grudging process of construction to exemplify and perpetuate the very evils to be remedied...." *Van Beeck v. Sabine Towing Co., Inc.*, 300 U.S. 342, 350–351, 57 S.Ct. 452, 456, 81 L.Ed. 685, 690 (1937). Canons of construction, like the one relied on by the trial court here, may sometimes be useful guidelines,
>
>> but they are not a set of Procrustean beds, to the dimensions of which all statutory language must be made to conform, however poor the fit.... We look at the words of the statute in the context of their adoption and from that perspective determine the meaning of the

language in a manner consistent with the goal the legislature was trying to achieve.

*Carolina Freight Carriers v. Keane,* 311 Md. 335, 339, 534 A.2d 1337, 1339 (1988).

If we were to adopt the position of either of the parties, the result would be unfair, inequitable and absurd. Stouter would have us give to a tax-sale purchaser in his position a *carte blanche* for the installation of any and all improvements regardless of the nature of those improvements or of the time they were installed. On the other hand, to follow Bailey's argument to a logical conclusion would mean that after notice a tax-sale purchaser would not be reimbursed for the value of improvements installed to preserve and protect the property. In the absence of any testimony in the record concerning the nature of the need for or utility of the improvements, it is impossible for us to make a determination whether Stouter is entitled to reimbursement.

On remand, if the evidence indicates that the improvements were necessary to prevent damage to the property such as the replacement of a roof for protection of the interior or the replacement of a furnace to prevent damage from freezing temperatures, then they would be of the type for which reimbursement is contemplated. If, however, there is evidence that the improvements were unnecessary, arbitrarily made, or were made for the purpose of enhancing the tax sale certificate holder's position, i.e., improving the property to an extent by which it would be either unreasonable or impossible for a party seeking to redeem to pay for their value, they should be treated as having been made at the tax-sale purchaser's peril. *Cf. City of Philadelphia v. Watkins,* 343 Pa.Super. 380, 494 A.2d 1135 (1985) (improvements made for the purpose of making property habitable were "necessary" expenses under Pennsylvania statute; statute entitled tax sale purchaser to compensation upon redemption by the owner for "necessary" as opposed to mere improvements on the property); *but see Nelson v. Naumowicz,* 1 N.J. 300, 63 A.2d 269 (1949); *Coleman v. Sweeney,* 11 N.J.Super. 352, 78 A.2d 313 (1951) (tax sale

purchaser could not recover for "habitability" or "necessary" type improvement because purchaser had no possessory right to the property prior to expiration of owner's right to redeem).

JUDGMENT VACATED; CASE REMANDED TO THE CIRCUIT COURT FOR FREDERICK COUNTY FOR PROCEEDINGS IN ACCORDANCE WITH THIS OPINION. ONE–HALF COSTS TO BE PAID BY APPELLANT AND ONE–HALF BY APPELLEES.

POLLITT, Judge.

Most respectfully, I dissent. I think the majority is rewriting the statute to achieve a desired result. I agree that the holding of the majority is equitable and just, but courts do not exercise general equity jurisdiction in tax sale foreclosure proceedings. *Voge v. Olin,* 69 Md.App. 508, 518 A.2d 474 (1986), *cert. granted,* 309 Md. 411, 524 A.2d 92 (1987).

Where statutory language is plain and free from ambiguity and expresses a definite and sensible meaning, no construction or clarification is needed or permitted. *Comptroller v. Fairchild Industries,* 303 Md. 280, 493 A.2d 341 (1985). I recognize that this "plain meaning" rule is not absolutely rigid, *Kaczorowski v. City of Baltimore,* 309 Md. 505, 525 A.2d 628 (1987), but "[w]e simply may not read into the statute something that is plainly not there." *Prince George's Homes v. Cahn,* 283 Md. 76, 80, 389 A.2d 853, 855 (1978). I think that is precisely what the majority has done in this case. The majority holds that when the Legislature said the amount required to redeem, after a judgment foreclosing the right of redemption is set aside, includes the *reasonable value* of *all* improvements, it really meant to say the value of *reasonable* improvements. I cannot reach that conclusion. As a former judge of the Court of Appeals has been quoted as saying, "if the Legislature doesn't mean what it says, it ought to say so."

When the General Assembly enacted Chapter 761 of the Acts of 1943, the predecessor to current Maryland Code (1986, 1987 Supp.) §§ 14–808 et seq., of the Tax–Property Article, § 90M contained substantially the same language as does the current § 14–845(b).[1] Section 89G of Chapter 761, as does current § 14–832, provided that the law shall be liberally construed as remedial legislation to encourage the foreclosure of rights of redemption. Presumably, the General Assembly was aware of Art. 17, § 362 of the Public Local Laws of Prince George's County (1930) (§ 462 by 1943 revision), which provided, in pertinent part:

362. * * * Upon the setting aside of a tax deed or the destruction of a tax title at law or in equity, the purchase money paid at tax sale for the land recovered shall be a first lien upon said land and premises, and said lien shall be enforceable in equity by the person entitled to the same, as is a vendor's lien. Likewise the value of buildings and improvements made thereon *in good faith* by the holder of said tax title or those under whom he claims. [emphasis added]

The legislators could have added that same "good faith" requirement to the Public General Law. They chose not to do so. Today, this Court has done it for them. I would prefer that this omission be supplied as suggested by Chief Justice Marshall in *M'Iver v. Ragan*, 15 U.S. 25, 2 Wheat. 25, 4 L.Ed. 175 (1817), when he said: "If this difficulty be produced by the legislative power, the same power might provide a remedy."

---

1. Similar language appeared in Chapter 540 of the Acts of 1941, applicable only to Baltimore City. Section 62P of that Act provided, in part:

"... If the final decree of the court foreclosing all rights of redemption is set aside on the ground of lack of jurisdiction, the amount required to redeem shall be the amount required by the provisions of this Act, and in addition thereto, the reasonable value, at the date the decree is set aside, of all improvements made on the property by the purchaser and his successors in interest, minus any net income derived from the use of the property...."

I would reverse and remand for a determination of the "reasonable value of all improvements."